IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LAWRENCE EBURUOH,

        *Plaintiff,*

v.

PNC BANK, N.A.,

        *Defendant.*

CIVIL ACTION
NO. 21-4430

**PAPPERT, J.**                                                                               June 16, 2022

## MEMORANDUM

*Pro se* plaintiff Lawrence Eburuoh alleges PNC Bank unlawfully withheld two transfers of a combined $483,475 from a business account he opened in an LLC's name. He sued PNC under state common and statutory law in the Delaware County Court of Common Pleas. PNC removed the case to this Court and then moved to dismiss Eburuoh's claims. The Court grants the Motion.

I[1]

In February of 2005, Eburuoh opened a "business" account at PNC in Nova Realty LLC's name. *See* (Mot. to Dismiss Ex. 1, ECF 12-2); *e.g.*, (Am. Compl. ¶ 41, ECF 10). The account is subject to PNC's "Account Agreement for Business Accounts," and

---

[1] These facts reference exhibits attached to PNC's Motion to Dismiss. (ECF 12-2.) Although a district court deciding such a motion ordinarily cannot consider matters "extraneous to" the complaint, documents "integral to or explicitly relied upon" by the complaint that are "undisputedly authentic" can be considered without converting the motion to dismiss into one for summary judgment. *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (internal quotation marks omitted); *Mayer v. Belichik*, 605 F.3d 223, 230 (3d Cir. 2010). The "critical" question is whether the plaintiff's claims are "based" on the extrinsic document, not whether he cited it. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The Court can consider PNC's exhibits because Eburuoh's claims are based on them and their authenticity is undisputed.

1

its statements—including one for the period between July 1 and July 14, 2016—are sent to Nova. (Mot. to Dismiss Exs. 2–4.)

On May 19 and 20, 2016, the account received wire transfers of $233,500 and $249,975, respectively. (Am. Compl. ¶ 6; Mot. to Dismiss Ex. 3.) PNC then placed a hold on the account while it investigated the transferred funds. (Am. Compl. ¶ 7.) On July 6, the same amounts were transferred out of the account. (Mot. to Dismiss Ex. 4.)

Five days earlier, Eburuoh emailed PNC's local bank manager, Sukeyna Fillis, requesting the two transfers' release from the account. (Am. Compl. ¶ 9.) Fillis responded on July 27 that the transfers were returned to the sender on July 6. (Mot. to Dismiss Ex. A.)

On July 13, 2021, Eburuoh repeated his demand for the transferred funds in a letter to PNC. (Mot. to Dismiss Ex. 5.) About a month later, PNC told Eburuoh it could not confirm whether the funds were returned to the sender. (Am. Compl. ¶¶ 13, 41); *see also* (Resp. to Mot. to Dismiss Ex. B, ECF 13-1).

Eburuoh initially sued PNC in state court on September 1, 2021. (ECF 1-1.) After PNC removed the case to this Court, Eburuoh filed his Amended Complaint, which asserts, in counts one through six respectively, claims seeking equitable relief, a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, breach of contract, promissory estoppel, conversion and replevin. (ECF 10.)

## II

To avoid dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual content to state a claim that is facially "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the facts pleaded permit a court to make the reasonable inference that a defendant is liable for the alleged misconduct.  *Id.*

Determining plausibility is a "context-specific task" requiring a court to use its judicial "experience and common sense."  *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675).  The court disregards a complaint's legal conclusions, assumes "well-pleaded" facts—that is, those supported by sufficient factual content to make them facially plausible—are true and then determines whether those facts plausibly entitle the pleader to relief.  *Id.*; *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  In doing so, the court construes well-pleaded facts in the light most favorable to the plaintiff and draws reasonable inferences from them.  *Connelly*, 809 F.3d at 790.  While a court liberally construes a *pro se* plaintiff's complaint, he nonetheless must allege sufficient facts to support his claims.  *Dluhos v. Stanberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### III

### A

### 1

In count one, Eburuoh alleges the money transferred into the account was "rightfully his" and wants the Court to return it to him.  (Am. Compl. ¶¶ 16, 20.)  Under Pennsylvania law, equitable relief is inappropriate when there are adequate legal or statutory remedies available.  *Tudor Dev. Grp., Inc. v. U.S. Fidelity & Guar. Co.*, 968 F.2d 357, 364 (3d Cir. 1992).  Further, the Uniform Commercial Code (which

Pennsylvania has adopted by statute), including Article 4A governing wire transfers, preempts equitable principles inconsistent with its provisions, purposes or policies as well as parallel equitable claims when it provides a "comprehensive" remedy. 13 PA. Stat. and Cons. Stat. § 1103 cmt. 2; *Env't Equip. & Serv. Co. v. Wachovia Bank, N.A.*, 741 F. Supp. 2d 705, 712–13 (E.D. Pa. 2010).

As an initial matter, Article 4A provided Eburuoh with an adequate statutory remedy. *See Tudor*, 968 F.2d at 364. In fact, Article 4A preempts Eburuoh's claim because it supplies a comprehensive remedy for disputes involving wire transfers. *See, e.g.*, *United States v. PNC Bank*, No. 07-417, 2009 WL 10736701, at *3 (E.D. Pa. Mar. 31, 2009) (Article 4A is a "comprehensive scheme" governing wire transfers (internal quotation marks omitted)); *see also ReAmerica, S.A. v. Wells Fargo Bank Int'l*, No. 04-5233, 2008 WL 7811571, at *7 (S.D.N.Y. Mar. 18, 2008) (Article 4A preempts common law negligence claim). Equitable relief also would be inconsistent with Article 4A's purpose of serving as the "exclusive" means of deciding parties' duties, liabilities and rights in situations to which it applies. *Fragale v. Wells Fargo Bank, N.A.*, 480 F. Supp. 3d 653, 659 (E.D. Pa. 2020) (quoting 13 PA. Stat. and Cons. Stat. § 4A102 cmt.).

2

Eburuoh's first claim is also time-barred.[2] Courts apply the applicable statute of limitations under state law when the UCC does not provide one, as in Article 4A. *Menichi v. Grant*, 995 F.2d 1224, 1229 (3d Cir. 1993) (citing 13 PA. Stat. and Cons.

---

[2] A statute of limitations defense can be raised in a motion to dismiss if the time alleged in a claim shows it has not been asserted within the limitations period. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). The time bar must be apparent on the complaint's face. *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978). It is here.

Stat. § 1103(b)); *see also* 42 PA. Stat. and Cons. Stat. § 5501(b) (UCC provisions control over Pennsylvania law's statutes of limitations only if inconsistent with them). Pennsylvania law requires claims seeking recovery of personal property or damages for personal injury based on tortious conduct to be brought within two years of accrual. 42 PA. Stat. and Cons. Stat. § 5524(3), (7). A claim accrues when the right to "institute and maintain" it arises. *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983).

Eburuoh filed his lawsuit on September 1, 2021, roughly five years after his claims accrued. (Compl., Not. of Removal, Ex. A, ECF 1-1.) Eburuoh could have sued PNC upon learning in July of 2016 that it would not release the money transferred into the account. Fillis told Eburuoh on July 27 the funds were returned to the sender on July 6. (Mot. to Dismiss Ex. A.) Moreover, a bank statement for the period between July 1 and July 14, 2016 shows the transfers were deducted from the account. (Mot. to Dismiss Ex. 4.)

The applicable statutes of limitations also foreclose Eburuoh's breach of contract claim in count three, conversion claim in count five[3] and count six's replevin claim. *See* (Am. Compl. ¶¶ 26–31, 38–53). PNC contends the breach of contract claim is subject to the two-year statute of limitations applicable to Article 4A. (Mot. to Dismiss 14.) The typical statute of limitations for breach of contract claims, however, is four years. 42

---

[3] This claim is also precluded by the gist of the action doctrine, which bars tort claims like conversion if a contract defines the parties' obligations and the tort duplicates them. *Bert Co. v. Turk*, 257 A.3d 93, 110 (Pa. Sup. Ct. 2021); *see also Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014) (claim is for breach of contract if its facts establish defendant breached a contractual duty). The basis of Eburuoh's conversion claim is that PNC violated its contractual duty to hold and safeguard money in the account. *See* (Am. Compl. ¶¶ 40–44).

PA. Stat. and Cons. Stat. § 5525. Eburuoh's claim is untimely either way because he brought it approximately five years after it accrued. Eburuoh's conversion and replevin claims, for which there is a two-year statute of limitations, are also untimely. *See* 42 PA. Stat. and Cons. Stat. § 5524(3).[4]

B

1

Eburuoh alleges in count two that PNC violated the UTPCPL by engaging in "fraudulent and deceptive conduct," including withholding the funds transferred into the account. (Am. Compl. ¶¶ 22–24.) Eburuoh's claim fails because he did not make a purchase primarily for personal, family or household purposes, as the UTPCPL requires. *See* 73 PA. Stat. and Cons. Stat. § 201-9.2(a). Rather, the funds at issue were transferred into an account Eburuoh opened in Nova's name that both he and PNC documents describe as a "business" account. *E.g.*, (Am. Compl. ¶ 41); (Mot. to Dismiss Ex. 3); (Resp. to Mot. to Dismiss 8).[5]

2

---

[4] Eburuoh seeks refuge under Pennsylvania's discovery rule, which tolls the statute of limitations until the plaintiff discovers, or reasonably should discover, his injury and its cause. *Wilson v. El-Daief*, 964 A.2d 354, 361–62 (Pa. 2009). Eburuoh argues he did not know he had a cause of action until August of 2021, when PNC allegedly indicated it could not verify whether the sender received the transferred funds. (Resp. to Mot. to Dismiss. 9–10, ECF 13.) Not so. Eburuoh knew PNC was withholding the funds against his wishes no later than July of 2016. *See supra* subsection III.A.2.

[5] *FTC v. American Future Systems et al.*, cited by Eburuoh, is inapt. No. 20-2266, 2021 WL 1721589 (E.D. Pa. Apr. 30, 2021). There, Pennsylvania sued several defendants under the UTPCPL's public enforcement provision. *Id.* at *10 (citing § 73 PA. Stat. and Cons. Stat. § 201-4). The court distinguished that provision from the private enforcement provision, under which Eburuoh brought his claim. *Id.* at *12–13 (the "limiting language" in § 73 PA. Stat. and Cons. Stat. § 201-9.2(a) is absent from the public enforcement provision).

In count four's promissory estoppel claim, Eburuoh alleges PNC breached its promises to allow him to make deposits into the account and that PNC would hold and safeguard the funds. (Am. Compl. ¶¶ 34–35.) Promissory estoppel is invoked when there is no "enforceable agreement" between the parties because of a lack of consideration. *Crouse v. Cyclops Indus.*, 745 A.2d 606, 402 (Pa. 2000). It is a contract "substitute" that a party cannot use to enforce a "contractual promise." *Dansko Holdings, Inc. v. Benefit Trust Co.*, 991 F.3d 494, 499 (3d Cir. 2021).

Eburuoh thus cannot use promissory estoppel to enforce his contract with PNC. Specifically, Eburuoh alleges PNC breached its contractual duty to hold and safeguard money in the account. (Am. Compl. ¶¶ 28–29); *see West Chester Univ. Found. V. MetLife Ins. Co. of Connecticut*, 259 F. Supp. 3d 211, 223 (E.D. Pa. 2017) (dismissing promissory estoppel claim that did not arise "outside the context" of contracts between parties).[6]

## IV

A court should grant a plaintiff leave to amend his complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). It can deny leave only when amendment would be futile or unequitable. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). Amendment is futile if the amended complaint would not withstand a motion to dismiss. *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Eburuoh has already

---

[6] Eburuoh argues the equitable doctrine of unclean hands precludes dismissal of his claims. (Resp. to Mot. to Dismiss. 12–13.) That doctrine requires a party seeking equitable relief to act fairly and without fraud or deceit. *Terraciano v. Commonwealth, Dept. of Transp., Bureau of Driver Licensing*, 753 A.2d 233, 237–38 (Pa. 2000). PNC is not seeking equitable relief; it seeks dismissal of Eburuoh's claims on the ground they are legally insufficient. *See* Fed. R. Civ. P. 12(b)(6).

amended his complaint and does not seek to do so again. In any event, further amendment would be futile because he cannot cure his claims' deficiencies.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
